# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FATEMEH AKBAR, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KENNETH CUCCINELLI, *et al.* ) <br> ) <br> Defendants. ) | Civil Case No. 18-2808 |

## MEMORANDUM OPINION

Plaintiff Fatemeh Akbar, an Iranian national, brings this action against federal defendants alleging that they unlawfully denied her Form I-485 application for adjustment of status (to become a permanent U.S. resident). Plaintiff's Amended Complaint asserts claims under the Administrative Procedure Act ("APA") and the Declaratory Judgment Act ("DJA").[1] She asks the Court to declare defendants' Notice of Intent to Deny ("NOID") arbitrary and capricious; to compel defendants to rescind the NOID; and to compel defendants to adjudicate her application in accordance with governing law within fourteen days of the Court's order.

Before the Court is defendants' Motion to Dismiss the Amended Complaint or, in the Alternative, Motion to Transfer Venue or, in the Alternative, Motion to Stay Further Proceedings Pending Administrative Action. ECF No. 14-1. Also before the Court is defendants' Motion for Relief from Local Rule 7(n)(1). ECF No. 15. For the reasons that follow, the Court will grant defendants' Motion to Dismiss and Motion for Relief. In dismissing the case, the Court will not reach defendants' Motion to Transfer Venue or Motion to Stay.

---

[1] Plaintiff originally petitioned the Court for a writ of mandamus to compel review of her application. ECF No. 1. On July 26, 2019, plaintiff filed an Amended Complaint asserting claims under the APA and DJA in response to defendants' Notice of Intent to Deny her application. ECF No. 10.

1

## Background

Plaintiff is currently a beneficiary of an I-130 filed by her husband, who is a permanent U.S. resident. Am. Compl. ¶ 7, ECF No. 10. In November 2015, she filed for an I-485 application for adjustment of status. *Id.* She and her husband were interviewed at the Detroit, Michigan U.S. Citizenship and Immigration Services ("USCIS") office in June 2016, but she heard nothing from the agency for more than two years after the interview. *Id.* ¶¶ 8–9. This delay prompted her to file suit against defendants in December 2018. *Id.* ¶ 10.

The couple was called back for a second interview at the same USCIS office in May 2019. *Id.* ¶ 12. In July 2019, USCIS issued the NOID, which plaintiff challenges as unlawful. *Id.* ¶¶ 13, 16. The NOID lists specific concerns related to her association with two Iranian professors while she was a student, as well as her connection to an Iranian company with direct dealings with the Iranian government.[2] *Id.* ¶ 14. But the NOID does not deny her application outright—it provides

---

[2] The NOID states:

> The record evidences that you have had a close association with Professor Mojtaba Atarodi, who, on or about April 18, 2013, was convicted . . . on charges of violating the International Emergency Powers Act. Specifically, Mr. Atarodi was convicted of Conspiracy to Export Goods to Iran Without a License, . . . . In his plea agreement Professor Atarodi admits the electronic components which he illegally exported to Iran were sent to Sharif University, the very school you attended, and they were sent during the exact time you attended the University and when he was at that time your academic advisor.
>
> Although you claim that you did not know the nature of Professor Atarodi's illegal activities, you were closely associated with him during the times of the commission of his crimes. The nature of your close relationship is demonstrated by the documentary evidence submitted in connection with your non-immigrant visa application, and confirmed as well by your own testimony at your interview on May 13, 2019. The substance of Professor Atarodi's conviction dealt with the transfer of sensitive information and devices that appear to be closely related to your shared area of specialized knowledge.
>
> Further evidentiary concerns are raised by your testimony during the May 13, 2019 interview and from a reference letter you submitted, dated May 21, 2013, from another advisor, Professor Ali Fotowat. During your interview, you testified that Professor Fotowat was one of your advisors after Professor Atarodi, and you were a teaching assistant for him. In the letter, Professor Fotowat indicated that you were "welcome to join our company as a member of technical staff." The company he referred to is Kavoshcom Asia Research and Development (R&D) Company. According to its website, Kavoshcom is an Iranian telecommunication and information technology research and development mobile solution provider and manufacturer in operation since 1991. In

an opportunity to submit evidence to rebut the government's allegations of illicit associations with those parties.[3] Notice of Intent to Deny 3, ECF No. 16-2. But if plaintiff failed to submit such evidence within a thirty-three-day period, the government would deny her application. *Id.* To date, nothing on the record reflects a final decision has been made by USCIS regarding its intent to deny plaintiff's application.[4]

Plaintiff challenges the NOID under the APA and DJA and argues that the case is ripe for review because the NOID is akin to a final denial of her application. Am. Compl. ¶ 5; Pl.'s Mem. Opp. Mot. Dismiss 9, ECF No. 16. She asks the Court to declare the NOID arbitrary and capricious; to compel defendants to rescind the NOID; and to compel defendants to adjudicate her application in accordance with governing law within fourteen days of the Court's order. Pl.'s Mem. Opp. Mot. Dismiss 7.

The government argues that the Court should dismiss plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) because the Court lacks subject-matter jurisdiction to resolve her

---

> recent years, Kavoshcom has been developing its own electronic chips and performing systems work on WiFi with local grants from Iran's Ministry of Industry, clearly indicating connections between Kavoshcom and the Iranian government.
>
> Accordingly, USCIS has unresolved concerns regarding the specific nature of your association with Professors Atarodi and Fotowat, as well as with Kavoshcom . . . .

Notice of Intent to Deny 2–3, ECF No. 16-2.

[3] The NOID continues:

> Pursuant to 8 CFR 103.2(b)(16)(i), you are hereby granted 33 days from the date of this letter to rebut the information presented herein and to present information on your own behalf. At that time, a decision will be made based on the evidence in the record. You may submit any evidence you wish this office to consider. Your response should explain why your application should not be denied in the exercise of discretion. Any evidence which you deem relevant to the application will be considered. If you do not respond within the time allowed, the application will be denied.

*Id.* at 3.

[4] Instead of waiting for a final decision after the thirty-three-day period to submit additional evidence, plaintiff challenged the NOID as unlawful in her Amended Complaint.

3

claims. Defs.' Mot. Dismiss 5, ECF No. 14-1. In the alternative, the government argues that venue is improper. *Id.* at 11. But if the Court holds that it has subject-matter jurisdiction and that venue is proper, the government asks the Court to stay proceedings pending final agency action. *Id.* at 15.

## Subject-Matter Jurisdiction

A party may move to dismiss a case under Rule 12(b)(1) when the court lacks subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal district courts must presume that a cause of action lies outside of its limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). To move her case past a Rule 12(b)(1) motion, plaintiff must prove, by a preponderance of the evidence, that the Court has jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936). Before considering defendants' alternative motions, the Court must determine whether subject-matter jurisdiction exits. *See Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (a Rule 12(b)(1) motion "presents a threshold challenge to the court's jurisdiction").

In evaluating defendants' Rule 12(b)(1) motion, the Court must accept plaintiff's factual allegations as true and give her the benefit of all inferences from the facts alleged. *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016). However, those factual allegations receive "closer scrutiny" than they would under a Rule 12(b)(6) motion. *Id.* If plaintiff fails to meet her burden on any claim, the Court must dismiss the claim. Fed. R. Civ. P. 12(h)(3).

The Court lacks subject-matter jurisdiction if plaintiff's claims are not yet ripe. *See Duke City Lumber Co. v. Butz*, 539 F.2d 220, 221 n.2 (D.C. Cir. 1976) (per curiam). In the context of agency action, the ripeness doctrine is meant to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative

policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). The ripeness doctrine prohibits parties from "pursu[ing] a cause of action to recover for an injury that is not 'certainly impending.'" *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999) (quoting *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996)).

To evaluate a claim's ripeness, the Court considers "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149. The Supreme Court elaborated upon these factors and concluded that courts should consider "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998). The facts of this case strongly favor returning the case to its administrative proceedings and avoiding premature judicial intervention.

Plaintiff's challenge to the NOID is unfit for review. Whether an issue is fit for review "depends on whether it is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Atl. States Legal Found. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003) (internal quotation marks omitted). In this case, plaintiff is challenging what amounts to a request for more evidence (which also signals that the government will deny her application if she fails to provide evidence that assuages the government's concerns).[5] But the NOID makes clear that her denial is not a foregone

---

[5] *See* NOID text at note 2 *supra* (describing the government's concerns).

5

conclusion[6]—had plaintiff's denial been a foregone conclusion, the government would not have asked for additional evidence to bolster her application.

Plaintiff's argument that the NOID is effectively a denial due to the specific facts of this case is without merit. She argues that she has not been provided any evidence to explain the alleged ties or associations with the professors and the Iranian company. Pl.'s Mem. Opp. Mot. Dismiss 9. And because she is unable to review those sources, she claims that she cannot provide evidence to rebut them. *Id.* But the NOID clearly describes several sources the government used to arrive at its conclusions, including Professor Atarodi's guilty plea, plaintiff's answers to interview questions, and her CV. *See* Notice of Intent to Deny 2–3. If plaintiff had any evidence to assuage the government's clearly articulated concerns, she should have presented it and waited for the final agency decision.

Furthermore, the Court would have benefitted from the presence or absence of additional evidence and a final agency decision. Plaintiff amended her complaint shortly after the government issued the NOID but before the thirty-three-day period to submit evidence passed, so it is impossible for the Court to know if plaintiff possesses any evidence to assuage the government's concerns. If the Court decides this case on the merits of plaintiff's claims without any assurance of finality, the Court would risk inappropriately interfering with USCIS' decision-making process. And so, because there are unresolved factual and evidentiary issues, the Court concludes that plaintiff's claims are not purely legal, consideration of the claims would benefit from a more concrete setting, and the NOID was not a final decision. Accordingly, plaintiff's case is unfit for review.

---

[6] "You may submit any evidence you wish this office to consider. Your response should explain why your application should not be denied in the exercise of discretion. Any evidence which you deem relevant to the application will be considered." Notice of Intent to Deny 3.

Because plaintiff's case is unfit for review, she must demonstrate that the Court's deferral to resolve her claims would cause "immediate and significant" hardship to outweigh the "institutional interests in the deferral of review." *Action All. of Senior Citizens v. Heckler*, 789 F.2d 931, 940 (D.C. Cir. 1986). Hardship considerations "rarely overcome the finality and fitness problems inherent in attempts to review tentative positions." *Pub. Citizen Health Research Grp. v. Comm'r, FDA*, 740 F.2d 21, 31 (D.C. Cir. 1984). Plaintiff has not articulated any immediate and significant hardship that would result from the Court's deferral. She states that the harm would be significant because it would continue to delay her I-485 application and "further effectuate the wrong caused by USCIS's arbitrary and capricious NOID." Pl.'s Mem. Opp. Mot. Dismiss 18. But plaintiff does not provide any evidence that a further delay would cause any harm that is substantial enough to outweigh the Court's interest in resolving only final agency decisions.

Any hardship that results from this deferral—assuming there is any—could have been prevented if plaintiff had followed the NOID's instructions about the submission of additional evidence and waited for a final decision after the thirty-three-day period. Instead of following those instructions, plaintiff asked the Court to prematurely intervene on her behalf. The Court declines to do so.

Because plaintiff's claims are unfit for review and deferral would not create any immediate and significant hardship, the Court **GRANTS** defendants' Motion to Dismiss plaintiff's Amended Complaint pursuant to Rule 12(b)(1).

### Relief from Local Rule 7(n)(1)

In granting defendants' Motion to Dismiss the case pursuant to Rule 12(b)(1), the Court has no need for the full administrative record. Because plaintiff's case is not ripe—and to conserve

scarce agency resources—the Court **GRANTS** defendants' Motion for Relief from Local Rule 7(n)(1).

## Conclusion

The Court will grant defendants' Motion to Dismiss and Motion for Relief from Local Rule 7(n)(1). In doing so, the case shall be returned to administrative proceedings, where it will hopefully reach an administrative conclusion. If the government issues a final denial of plaintiff's application, plaintiff may elect to file for leave to amend her complaint within thirty (30) days of the denial. A separate order follows.

Date: March 18, 2020

Royce C. Lamberth
United States District Judge